MARY A. SHELLEY, Appellant, v. JACOB A. ESTES et al., Respondents.

St. Louis Court of Appeals, February 27, 1900.

1. **Vendor's Lien:** INDEPENDENT SECURITY: WAIVED HER EQUITABLE OR VENDOR'S LIEN. The evidence and contract show that plaintiff took security independent of the lands sold by her, for the purchase money, and that she relied upon this independent security, and not on the lands for the purchase money.

2. ——: ——: CONTRACT, MADE BINDING. Plaintiff hav-
ing agreed to accept out of the estate of her husband, three thousand
dollars worth of property in consideration of the conveyance of
her dower and homestead interest therein to her children, can not
after she discovered that the personal property was insufficient to
pay the whole of the three thousand dollars, call to her aid a court
of equity to establish against a part of the land, a vendor's lien.

Appeal from the Newton Circuit Court.—*Hon. John Cobb
Lamson,* Judge.

AFFIRMED.

*T. D. Stelle* for appellant.

(1) It is difficult to understand upon what theory the
trial court decided this case adversely to plaintiff. The proof
was abundant, clear and positive that the balance of the
purchase price of plaintiff's estate in this land had never been
paid and that defendant, Jacob Estes, had full and complete
knowledge of its nonpayment. This being fully established
was sufficient and all that was necessary to entitle plaintiff to
recover and enforce her liens. Delassus v. Poston, 19 Mo.
425; 2 Jones on Liens, secs. 1061, 1062 and 1083; Bennett
v. Shipley, 82 Mo. 448. (2) That a vendor of land has a lien
for unpaid purchase money, enforcible in equity both as
against the vendee, and a purchaser from him with notice,
even though no express lien is reserved, is well settled in this
state. This lien is treated as a constructive or implied trust,
and the principle on which the lien rests, in the nature of the
trust, is that it would be against conscience to permit a person
who has obtained the land of another, to keep it, and not pay
the full consideration money. Pratt v. Clark, 57 Mo. 191;
2 Story, Eq., secs.1217-1220; Bennett v. Shipley, 82 Mo.
448. The foregoing being true and resting on sound principle
and authority, would it not be against conscience to permit the
defendants to keep the homestead and dower estate of Mrs.

Shelley, in this land which she conveyed to them without paying her the full consideration? 2 Jones on Liens, secs. 1064, 1065, 1067, 1068, 1069; Thomas v. Bridges, 73 Mo. 533.   (3) The lien extends to equitable as well as legal titles. Bledsoe v. Games, 30 Mo. 448 and is not confined to the sale of a legal title in fee.   52 Mich. 76.   And section 4514, R. S. 1889, expressly authorizes the widow to transfer and assign her unassigned dower.   (4) It is not material whether the trial court did or did not err in setting aside his finding of facts, as the appellate courts in chancery causes are invested with full power to make their own findings of fact.   Finley v. Schlueter, 54 Mo. App. 458.   In such cases the appellate court hears the case *de novo* and, will be considered for the most part as if it had originated in the appellate court and was to be heard then for the first time.   Blount v. Spratt, 113 Mo. 48; Lins v. Lenhardt, 127 Mo. 271; Warren v. Ritchie, 128. Mo. 311.

*Geo. Hubbert* for respondents.

(1) The written contract, by which the appellant took all rights to the specific personal estate belonging to the six heirs of Calvin Shelley was destructive of any lien which might have been possible to appellant as against Elvia Shelley for conveyance to her alone.   This results from the rule which applies to the acceptance by a vendor, in any way, of any obligation, undertaking or security from any third person, as collateral to the debt of the vendee.   2 Jones on Liens sec. 1086; 2 Warv. on Vendors, p. 713, sec. 21, p. 725; 28 Am. and Eng. Ency. of Law, pp. 178, 179; Winn v. Lippencott Co., 125 Mo. 528, 544; Boyer v. Austin, 75 Mo. 81; Routte v. Murray, 48 Mo. App. 415; Delassus v. Poston, 19 Mo. 425; Stephens v. Rainwater, 4 Mo. App. 292; Christy v. McKee, 94 Mo. 241; Briscoe v. Callahan, 77 Mo. 134; Durette v.

Briggs, 47 Mo. 356; Sullivan v. Ferguson, 40 Mo. 79.    (2)
There was no price or value fixed on whatever of right or
interest the appellant released to Elvia; and in view of the
600 to 900 acres of land descended to the parties, it can not be
said that the 104 acres taken by Elvia as against as much as
160 taken by some others, would have been altogether covered
by the life dower or homestead of the widow, and thus we
have an uncertain, unliquidated, collateral sort of a contract
with regard to transfer of land, such as can never give rise to
a vendor's lien; for a vendor's lien is based only on a sale of
land for a certain and unpaid price.    2 Jones on Liens, secs.
1066, 1071; 28 Am. and Eng. Ency. of Law, pp. 165, 166.
(3) And the lien, when it exists at all, can not cover other
than the estate sold; and even where a deed is made, if the
grantor owned nothing to convey, no lien could arise to him.
2 Jones on Liens, sec. 1069.

BLAND, P. J.—The action is in equity to establish and
enforce a vendor's lien against real estate for a balance of the
purchase price alleged to be due.    The essential facts are, that
in 1891 Calvin Shelley died intestate seized of about 900
acres of land situated in McDonald county and some personal
estate (amount not developed by the evidence).    He left sur-
viving him Mary A. Shelley (the plaintiff) his widow, and
Isaac R. Shelley, E. H. Goodner (nee Shelley) Thursia V.
Culp (nee Shelley) Mollie B. Hodge (nee Shelley) Elvia J.
Shelley and Benjamin F. Shelley, his children by Mary A.
as his only heirs, all of whom were of full age on July
20, 1892.    The plaintiff for a consideration of $3,000 to be
paid out of the personal estate of Calvin Shelley, agreed to
convey to the heirs her homestead and dower interests in all
the lands of which her husband died seized, except two and
70-100 acres where the dwelling house stood.    The heirs then
proceeded to partition the lands among themselves, each agree-

ing to take the parcels as allotted. After agreeing to the partition the parties all met and entered into the following contract in writing ,to wit:

"An article of agreement, made and entered into on this twentieth day of July, 1892, by and between Isaac R. Shelley, Elizabeth H. Goodner, Thursia G. Culp and W. H. Culp her husband, Mollie B. Hodge and Jesse H. Hodge her husband, Elvia J. Shelley and Benjamin F. Shelley heirs at law. of Calvin Shelley deceased and parties of the first part and Mary A. Shelley widow of said Calvin Shelley party of the second part. The party of the second part is to assign to said parties of the first part all of her right of dower or homestead in and to all the land to which Calvin Shelley died seized and possessed except two and 70-100 acres where the house now stands. And the said parties of the first part in consideration of the signing of the deeds aforesaid by the said party of the second part agree and bind themselves to give unto the said party of the second part the sum of three thousand dollars out of the personal estate and effects of said estate as her absolute property to use as she may think best. Witness our hands and seals this the day and year above written.

(Signed)            Isaac R. Shelley          (Seal)
                    E. H. Goodner             (Seal)
                    Thursia V. Culp           (Seal)
                    W. C. Culp                (Seal)
                    Mollie B. Hodge           (Seal)
                    Jesse S. Hodge            (Seal)
                    Elvia J. Shelley          (Seal)
                    Benjamin F. Shelley       (Seal)
                    Mary A. Shelley           (Seal)

"Acknowledged same date before W. J. Kelly, J. P. Recorded June 5, 1896, Mort. Rec. J., p. 49."

On the same day a deed was made to Elvia J. Shelley conveying to her the lands, against which it is sought to

enforce the vendor's lien, signed and duly acknowledged by all the other parties to the contract, including the plaintiff. Deeds were also made to each of the other heirs for the lands allotted to him or her by the amicable partition, signed and acknowledged by the other heirs and by the plaintiff. Elvia intermarried with defendant Harry W. Estes; after the marriage she and her husband conveyed the lands allotted and conveyed to her by general warranty deed, to defendant, Jacob Estes, for an expressed consideration of $2,500, but an actual consideration of $1,800, $800 of which was paid; for the balance of $1,000, Jacob made and delivered to Harry Estes his promissory note, due in ten years from date, with the privilege to the maker, to pay $100 at any time, to be credited on the note. After making the deed to Jacob Estes but before this suit was brought, Elvia died. Plaintiff alleges in her petition that the personal estate of Calvin Shelley, deceased, was insufficient to make up the amount ($3,000) the heirs agreed to pay her for her interest in the real estate conveyed to them by her, and alleged that the amount due from Elvia, to make up the balance due plaintiff from her, is $300; alleges that for the payment of this amount she has a vendor's lien on the lands, and alleges that defendant Jacob A. Estes purchased the land with knowledge of all the facts and notice of her vendor's lien.

The answer denies the existence of the lien, of the indebtedness, of notice to defendant Jacob A. Estes of any claim or lien against the land in favor of plaintiff, denies all other allegations of the petition, and alleged that Jacob purchased the land in good faith and for a valuable consideration.

There was a mass of incompetent and irrelevant testimony admitted on the trial. The competent testimony produced by the plaintiff tended to prove that the personal estate of her deceased husband was considerably less than $3,000, but how much less, or what amount she received from that

source ·under the contract with the heir's, is not definitely fixed by her, or any other witness. Only estimates are given, and they vary with different witnesses. The evidence on this question of fact, essential to plaintiff's case, is in a very unsatisfactory state. Plaintiff also offered evidence tending to show that defendant Jacob Estes bought the land with knowledge of her claim against it, and that he had stated to her that when he bought the land he agreed with Elvia to pay plaintiff the $300 she claimed, and afterwards promised her to pay it as soon as he could raise the money. The evidence on the part of defendant tended to prove that defendant Jacob Estes bought the land in good faith, paid value for it, that he bought without notice of any claim by plaintiff against the land, or notice that any sum was due her for its purchase price from her daughter Elvia; that he did not agree to pay plaintiff anything at any time on account of her claim against the land, made no promises at any time to pay her any sum, and never heard of her claim until the suit was brought. The court found the issues for defendants and dismissed the bill. Plaintiff appealed.

I. Conceding for the argument that the plaintiff was such a vendor of the land described as would under ordinary circumstances entitle her to establish a vendor's lien in a court of equity, did she not waive that right by the contract of July 20, 1892? The language of that contract indicates that the parties to it assumed that there was as much as $3,000 of personal property of the estate of Calvin Shelley for distribution among his heirs. Calvin Shelley had been dead for eighteen months, and it is to be presumed that his estate was undergoing administration, and that inventories and appraised bills of his personal effects had been duly made and filed, and that the widow and heirs knew their contents. With this information before them they entered into the contract, the legal effect of which is, that Elvia, and the

other heirs, assigned to their mother $3,000 worth of property to which they were or would be entitled on distribution of their deceased father's personal effects as security for the payment of the agreed value of the homestead and dower interests of their mother in the lands conveyed to them in severalty. It turned out, according to the testimony, that the assigned property was insufficient to pay the whole of the consideration agreed to be paid; in other words, that the security taken by the plaintiff for the purchase price of the lands sold by her proved inadequate, and because inadequate she now calls to her aid a court of equity to establish against a part of the land, a vendor's lien. There is no evidence that she by contract or agreement, retained her vendor's lien, when she executed the deeds; on the contrary the evidence is that she refused to sign any of the deeds until the contract of July 20 was written out, read over to her and signed by all of the other parties, thus showing that she looked to the personal estate of her deceased husband for payment of the purchase money, and not to the lands. This evidence and the contract clearly show that she took security independent of the lands for the purchase money, and that she relied upon this independent security and not on the lands for the purchase money. Such being the case the authorities all are that she waived her lien. Carr v. Thompson, 67 Mo. 472; Boyer v. Austin, 75 Mo. 81; Christy v. McKee, 94 Mo. 241; Adams v. Buchanan, 49 Mo. 64; Durette v. Briggs, 47 Mo. 356; Sullivan v. Ferguson, 40 Mo. 79; Delassus v. Poston, 19 Mo. 425; Routte v. Murray, 48 Mo. App. 15. Wherefore the judgment of the circuit court is affirmed. All concur.